IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:07-CR-160 |
| ) | (PHILLIPS/GUYTON) |
| RONALD EUGENE OGLE, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the Court on the defendant's Motion to Suppress Evidence [Doc. 11]. This motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on June 17, 2008. Assistant Untied States Attorney Cynthia Davidson was present representing the government. Attorney Jonathan Moffatt was present representing the defendant, Ronald Eugene Ogle ("Ogle"). The defendant was also present. At the conclusion of the hearing, the parties asked, and were allowed to file post-hearing briefs. The defendant filed a supplemental memorandum [Doc. 16] on July 11, 2008. The government advised the Court on July 25, 2008 that it would not file a response to the defendant's supplemental memorandum. Accordingly, the Court took the suppression motion and related filings under advisement on July 25, 2008.

1

## I. POSITIONS OF THE PARTIES

The defendant was indicted [Doc. 1] on one count of being a felon in possession of a firearm. The charge arises out of the search of a vehicle being driven by Ogle on November 12, 2006. The search of the vehicle revealed a firearm.

In his motion to suppress [Doc. 11], the defendant claims that the subject vehicle was illegally searched by officers of the Blount County Sheriff's Department. He argues that the officers seized him, placed him in handcuffs, and then secured him before the vehicle was searched, and therefore, there was no lawful reason or need to search the vehicle.

The government argues [Doc. 12] that defendant Ogle's motion should be denied because the seizure of the firearm from the passenger compartment of the vehicle was made during a search conducted incident to the defendant's arrest. Moreover, the government argues that the search of the vehicle was related to the need to preserve evidence.

## II. SUMMARY OF TESTIMONY

At the evidentiary hearing on this motion, the government called Officer Brant Romer ("Romer") as its witness[1]. Romer testified that on the day in question, November 12, 2006, he was a deputy with the Blount County Sheriff's Department. He responded to a "911 hang-up call" at 802 Ednar Garland Road. When Romer arrived on the scene it was late at night, around 1:00 a.m., and he pulled into a cul-de-sac and parked. He then saw a vehicle's headlights "from far off in the distance, slowly approaching the cul-de-sac."

Romer, not able to locate the exact address of the call, radioed dispatch and asked for

---

[1]The transcript of the testimony is part of the record [Doc. 17].

assistance in locating the exact location of the call. During this time, the other vehicle, now identifiable as a "red SUV," continued to approach Romer "head-to-head." The red SUV then parked in the cul-de-sac, and Romer backed up his vehicle and also parked.

Romer observed the driver of the red SUV "lean over as if into the passenger seat." Romer's testimony continued:

> As he pulls into the cul-de-sac and I back up, just as I'm putting the car in "park" and picking up my radio to advise I'll be out of my vehicle, he steps out of the vehicle, and ComCenter, the communication center, comes back over the radio and advises there's been a domestic assault at this residence, the subject's leaving in a red SUV and he's also armed with a handgun.

[Doc. 17, page 8].

Romer testified that when Ogle stepped from the red SUV, Romer saw what appeared to be blood on Ogle's pants, and that Ogle was wearing "a sheath to a rather large knife." Romer then ordered Ogle and a passenger from Ogle's vehicle to move to the back of Ogle's vehicle, where Romer "proned them out on the ground." Romer described this as a "felony take down," and since he was there alone, he was concerned for his safety[2].

Romer kept Ogle and the passenger prone, and Romer did nothing more, while he waited for backup to arrive. When backup arrived, Ogle and the passenger were placed in handcuffs, and Romer patted them down.

Romer testified that the pat down of Ogle revealed "a large army knife" and several smaller knives. Romer then searched Ogle's vehicle and found a .25 caliber pistol. Romer testified that

---

[2]A young Explorer Scout was with Romer as a "ride along", but he stayed in the officer's cruiser and did not participate in the events at issue.

Wanda Ogle, the defendant's mother, later confirmed that this pistol was the same pistol which the defendant took from her during a struggle at her residence. Wanda Ogle also appeared to be injured. Romer testified that Ogle was arrested and charged with domestic aggravated assault.

On cross-examination, Romer testified that the first backup who arrived was Deputy Kevin Fuller ("Fuller"). Fuller arrived in eight minutes. The pat downs and the vehicle search occurred after Fuller arrived on the scene.

Romer corrected his earlier testimony and stated that Fuller, not Romer, did the pat down of Ogle. Romer also clarified that one knife, the "army knife", was found on Ogle, and the other knives were found in the vehicle.

Romer again stated that as the red SUV pulled in front of his car, he saw the SUV's driver "lean over in the passenger seat," but he could not see what else was occurring inside of the SUV.

Romer testified that after the pat downs and cuffing of Ogle and his passenger, the passenger was placed in the back of Romer's cruiser. Ogle remained outside of the cruiser "for quite some time outside of the vehicle, on the hood of [Romer's] vehicle." Ogle was in custody throughout this time.

Finally, Romer corrected his earlier testimony regarding the caliber of the pistol found in Ogle's vehicle, changing it from a .25 to a .22 caliber. Romer added that he found the pistol under the passenger seat. He testified that the knife found on Ogle's person during the pat down was in the sheath worn by Ogle.

### III. ANALYSIS

The defendant contends that his rights under the Fourth Amendment were violated because the officer had no right to search his car after he had been patted down and secured in handcuffs.

Specifically, he argues that the officer had neither probable cause nor reasonable suspicion to search his vehicle. The government relies on the automobile search exception, arguing the automobile search was done for purposes of officer safety and preservation of evidence.

The Court finds that the testimony of Romer was not impeached, and is credible. In fact, it appears that the parties do not dispute the facts which are central to the issue before the Court. The Court finds that Romer was advised by dispatch that the driver of a red SUV in that area was armed and had been involved in a domestic assault. Immediately thereafter, Romer saw Ogle, with blood on his clothing and wearing a large sheath knife, exit a red SUV, after leaning over into the passenger side of the vehicle. Based on this, the Court finds that Romer had adequate legal cause to believe that Ogle may be armed and dangerous and had recently been involved in a violent domestic assault. Accordingly, Romer lawfully seized and detained Ogle, and further, that Ogle lawfully was patted down.

Having found that Romer could have reasonably believed the defendant was potentially armed and dangerous, and that the frisk of the defendant was therefore proper, the Court now turns to the issue raised by the defendant's motion: the propriety of the automobile search. The defendant argues that it was unlawful for the officer to search Ogle's vehicle. The government argues that a search of Ogle's vehicle following the initial pat down of his person was justified as a permissible extension of Terry.

The rationale of Terry has been extended to permit limited searches of the vehicle's passenger compartment where a police officer has a reasonable belief based on "specific or articulable facts, which taken with rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of

5

weapons. <u>Michigan v. Long</u>, 463 U.S. 1032, 1049 (1983). The scope of the protective search may include those areas in which a weapon may be placed or hidden. <u>Long</u>, 463 U.S. at 1049. The Supreme Court has recognized that a suspect may break away from police control and retrieve a weapon from his vehicle. <u>Id.</u> At 1051; <u>see</u> <u>also</u> <u>United States v. Paulino</u>, 935 F.2d 739, 747 (6th Cir. 1991) (holding that six police officers on scene separating suspect from cooler possibly containing weapon did not obviate need for protective search of vehicle). Furthermore, an officer may also anticipate allowing the suspect to reenter the vehicle after the stop, at which time the suspect may retrieve any hidden weapons. <u>Long</u>, 463 U.S. at 1051-52. Moreover, the Sixth Circuit has held that "[t]he 'patdown' of a vehicle need not be predicated on the discovery of a weapon on a suspect's person." <u>United States v. Slater</u>, 81 F.3d 162, 1996 WL 143460 * 3 (6th Cir. March 28, 1996) (citing <u>United States v. Holified</u>, 956 F.2d 665, 668-69 (7th Cir. 1992)); <u>see</u> <u>also</u> <u>Evans</u>, 994 F.2d at 321, and <u>Butcher</u>, 1993 WL 272450 at *6, (finding that furtive movement coupled with facts linking suspect to known dangerous activities, justified <u>Terry</u> search of vehicle).

The Court finds that the same factors that justified the pat down of Ogle supplied reasonable belief that the defendant was potentially armed and dangerous and justified Romer's search of the interior of Ogle's vehicle to ensure the officers' safety. The fact that Ogle was outside of his vehicle, and that he was under the control of another officer who was at the scene, does not detract from the fact that the defendant may have been able to access a weapon in his vehicle readily. Because Ogle would have been permitted to reenter his vehicle if he had not been arrested, and would have had immediate access to any weapons inside, the Court finds that it was reasonable for Romer to check the passenger compartment of Ogle's vehicle for weapons. Furthermore, the Court finds that the furtive action of Ogle leaning over into the passenger side of the vehicle suggested that

6

was an area where a weapon may be placed or hidden. Therefore, the Court concludes that Romer was justified in conducting a protective search of the passenger compartment of Ogle's vehicle, and also to search for the preservation of evidence.

## V. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing, and after reviewing the relevant legal authorities, it is clear that there is no basis to suppress any evidence seized in this case. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence [Doc. 11] be **DENIED**.[3]

                           Respectfully submitted,

                               s/ H. Bruce Guyton
                            United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).