# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:07-cr-160 (Phillips/Guyton) |
| RONALD EUGENE OGLE, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

On August 1, 2008, the Honorable H. Bruce Guyton, United States Magistrate Judge, issued a seven-page Report and Recommendation ("R&R") [Doc. 19], in which recommended that defendant's Motion to Suppress Evidence [Doc. 11] be denied. The matter is now before the court on defendant's timely objections to the R&R [Doc. 21].

As required by 28 U.S.C. § 636(b)(1) and Federal Rule of Criminal Procedure 59(b)(3), the court has undertaken a de novo review of those portions of the R&R to which defendant objects. For the reasons that follow, defendant's objections are overruled, whereby defendant's motion to suppress is denied.

## I.

The Fourth Amendment protects citizens from "unreasonable searches and seizures." U.S. Const., amend. IV. While warrantless searches and seizures are generally unreasonable and therefore unconstitutional,

> [t]he Supreme Court has identified three types of reasonable, and thus permissible, warrantless

-1-

> encounters between the police and citizens: (1) consensual encounters in which contact is initiated by a police officer without any articulable reason whatsoever and the citizen is briefly asked questions; (2) a temporary involuntary detention or *Terry* stop which must be predicated upon "reasonable suspicion;" and (3) arrests which must be based upon "probable cause."

*United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008).

Judge Guyton analyzed the search and seizure under case law applicable to investigative detentions, namely, *Terry v. Ohio*, 392 U.S. 1 (1968), and *Michigan v. Long*, 463 U.S. 1032 (1983), and their progeny. Defendant argues, however, that he was under arrest before the search of his vehicle, and therefore those cases pertaining to lawful investigative detentions are inapplicable to the instant case. [Doc. 17 at 34; Doc. 21 at 4]. Rather, defendant argues, the case is properly analyzed under case law applying to searches of vehicles incident to arrest, and indeed defendant argues his objections to the R&R thereunder.

Defendant specifically objects to the following findings made by Judge Guyton:

> (1) [that] Officer Romer's search of the interior of the vehicle operated by the Defendant was justified to ensure the officer's safety, ... (2) [that] the defendant may have been able to access a weapon in his vehicle readily when under the control of an officer who was on the scene, (3) that there were any indications that a weapon may have been placed or hidden in the vehicle, and ... (4) [that] the officer was justified in conducting a protective search of the passenger compartment of the vehicle operated by Defendant for any reason including to search for the preservation of the evidence.

[Doc. 21 at 1].

As the court will discuss below, the search and seizure was lawful under either standard, and accordingly defendant's objections are without merit.

## II.

As an initial matter, the court notes that defendant's objections address solely the propriety of the automobile search, and not the seizure and detention of defendant himself. Accordingly, the court accepts Judge Guyton's finding that Officer Romer "lawfully seized and detained Ogle,"

[Doc. 19 at 5], and adopts and incorporates the finding herein.

**III.**

Defendant argues that he was arrested before the search of the vehicle, and therefore the search of the vehicle should be analyzed under case law pertaining to searches incident to lawful arrest, as opposed to protective searches as extensions of investigatory detentions. The court finds that the distinction is of no import, as the search was lawful under both standards.

A.   **Search Incident to Lawful Arrest**

Defendant objects that the subsequent search of his vehicle incident to the arrest was invalid, arguing that because he was in custody and there were no indications that a weapon was in the vehicle, the search was not necessary to ensure the officer's safety. Defendant further objects that the search was not necessary to preserve evidence.

In *New York v. Belton*, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that vehicle." *New York v. Belton*, 453 U.S. 454, 460 (1981). In *Thornton v. United States*, the Supreme Court established a bright-line rule under *Belton* that "[s]o long as an arrestee is [a] 'recent occupant' of a vehicle ... officers may search that vehicle incident to the arrest." *Thornton v. United States*, 541 U.S. 615, 623-24 (2007). While this principle is justified on the twin bases of officer safety and preservation of evidence, *id.* at 621, 623, such concerns for safety and preservation of evidence are not, under current case law, prerequisites that must be established prior to the search. Accordingly, while defendant's objections are argued with regard to any perceived threats to the officer's safety and the need to preserve evidence, under

-3-

present case law, these are irrelevant concerns to whether the search was valid incident to arrest.[1]
As long as the officers had probable cause to arrest defendant, they could search his vehicle for whatever reason, as he was its recent occupant. As defendant does not appear to contest his arrest or detention, the court need not address the objections further under such case law.[2]

As the court will discuss below, however, such a threat to officer safety is a prerequisite for a search of a vehicle subject to an investigatory detention, and the court finds at present that these objections are more appropriately addressed under these standards.[3]

### B.     Investigative Detention

In particular circumstances, a search of a vehicle may also be valid even if the defendant is only subject to an investigative detention and not under arrest. In *Terry v. Ohio*, 392 U.S. 1 (1968), "the Supreme Court held that in limited circumstances, an officer may frisk an individual if the individual's conduct leads an officer to reasonably suspect that he is 'armed and presently dangerous

---

[1] Although presently this is a distinction without a difference, a pending Supreme Court case could alter the analysis. On February 25, 2008, the Supreme Court granted a writ of certiorari in *Arizona v. Gant* to decide the following discrete issue: "Does the Fourth Amendment require law enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been arrested and secured?" *Arizona v. Gant*, 128 S. Ct. 1443, 1444 (2008) (mem.). Presently under the bright-line rule established by *Belton* and *Thornton*, an officer may search a vehicle subsequent to a lawful arrest even if the arrestee is handcuffed and secured in a cruiser. *United States v. Nichols*, 512 F.3d 789, 797 (6th Cir. 2008) ("Although it certainly seems impossible that [defendant] could have, in a Houdini-like fashion, extricated himself from his handcuffs and escaped the patrol car to retrieve a weapon from a locked glove box, this court has made clear that, under prevailing Supreme Court precedent, the search-incident-to-arrest authority applies even where an item 'is no longer accessible to the defendant at the time of the search[, s]o long as the defendant had the item within his immediate control near the time of his arrest....' " *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001)).

[2] While the court finds that a full custodial arrest had not taken place and defendant was, prior to the search of the vehicle, merely subject to an investigatory detention, in any event, the officers had probable cause to arrest defendant prior to the search of the vehicle. The blood on defendant's pants, the knife sheath and the large knife, and the radio dispatch indicating that an alleged domestic assault had occurred with the assailant fleeing in a red SUV, gave the officers probable cause to arrest the defendant before they conducted the search of his vehicle.

[3] Clearly defendant argued his objections with an eye to preserving any arguments pending the outcome of *Gant*. In the event the Supreme Court were to answer the question presented in *Gant*, *supra* n. 1, in the affirmative, the court's reasoning *infra* Part III.B. would apply.

to the officer or to others.' " *United States v. Graham*, 483 F.3d 431, 438 (6th Cir. 2007) (quoting *Terry*, 392 U.S. at 24). In *Michigan v. Long*, the Court extended the scope of a *Terry* search to a protective search of the vehicle:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from which those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (quoting *Terry*, 392 U.S. at 21). Furthermore, the search of the automobile is valid even if the suspect is effectively under the officer's control, as the suspect may "break away from police control and retrieve a weapon from his automobile." *Id.* at 1051. In addition, if "not placed under arrest, [the suspect] ... will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Id.* at 1052. The Court stressed that such an extension is necessary, even if the defendant appears to be under control of the police, because in *Terry* stops "the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected." *Id.*

The evidence demonstrates that a full custodial arrest had not taken place prior to the arrest of the vehicle. [*See, e.g.*, Doc. 17 at 14 (indicating that defendant was arrested subject to the investigation); *id.* at 22 (indicating that defendant was secured but not under full arrest)]. Accordingly *Terry* and *Long* are apposite.[4] Under these standards, the court finds that the search of the vehicle was lawful. When the defendant initially exited his car and approached Officer Romer, Officer Romer observed blood on defendant's pants and that defendant was wearing a knife sheath. Indeed, Officer Romer testified that defendant had blood "all over him." [Doc. 17 at 32].

---

[4] In any event, as the court noted above, *supra* n. 2, the blood on defendant's pants, the recovered sheath and knife, and the information conveyed by the radio dispatches and defendant's matching description, gave rise to probable cause such that the officers could have legally arrested defendant before the search of the vehicle occurred.

-5-

These facts clearly gave Officer Romer at a minimum reasonable suspicion that defendant was armed and dangerous, such that a *Terry* patdown of defendant was warranted.

With regard to defendant's specific objections, first, the search was justified to ensure the officer's safety. The facts indicate that defendant stepped out of the vehicle before Officer Romer approached defendant, as Officer Romer was still in his car. [Doc. 17 at 8]. A radio dispatch just before Officer Romer exited his vehicle advised that "there's been a domestic assault at this residence, the subject's leaving in a red SUV[,] and he's also armed with a handgun." [*Id.*]. Upon hearing this message, Officer Romer exited his cruiser and saw approaching him, wearing a "sheath to a rather large knife." [*Id.* at 9]. Officer Romer also testified that there "appeared to be blood on [defendant's] pants." [*Id.*]. Finally, the patdown of defendant revealed a large knife," [*id.* at 11], and yet no handgun. Because the radio dispatch had indicated that defendant was armed with a handgun, the search of the vehicle, following the patdown of defendant's person which revealed no such handgun, was justified to ensure Officer Romer's safety.

Second, Officer Romer's continued safety was threatened despite defendant being under control of an officer on the scene, as defendant may have been able to access a weapon in his vehicle. Defendant contends that *Long* is distinguishable from the instant case because any threat to the officers was effectively eliminated, by virtue of his being handcuffed and detained. Yet the fact that a defendant is handcuffed and even secured in the police cruiser does not alter the *Long* analysis. A person may be handcuffed and placed in the police cruiser without being arrested. *United States v. Graham*, 483 F.3d 431, 440 (6th Cir. 2007) (defendant who was "cuffed and secured in the back of the cruiser" was "merely detained, but not under arrest"); *see also, e.g.*, *Campbell v. Stamper*, 244 F. App'x 629, 633 (6th Cir. 2007) ("In conducting a *Terry* stop, police officers may

-6-

draw their weapons and use handcuffs without offending the Fourth Amendment if they reasonably believe that a suspect is armed and might pose a danger to them as they conduct their investigation."). Accordingly, the *Long* analysis with regard to the ongoing threat to officer safety is unaltered despite defendant being handcuffed and detained: "[h]ad the officers not searched the car and simply let him go, [defendant] would immediately have had access to the weapon once he reentered the car." *Graham*, 483 F.3d at 440. The threat to officer safety stems from the potential release of the detained suspect subsequent to the investigative detention, not necessarily any threat while he is handcuffed. *Id.*

Third, defendant objects that there were "no indications that a weapon may have been placed or hidden in the vehicle." [Doc. 21 at 1]. The radio dispatch, however, apparently from a subsequent 911 call, informed Officer Romer that the suspect was armed with a handgun. When the patdown of defendant's person failed to yield this handgun, it is only logical that the handgun would be in the vehicle from which defendant recently exited, and as the court held above, a search of the vehicle was justified to ensure the officers' continued safety. Defendant further objects to the finding that he made a "furtive" movement, yet concedes that Officer Romer witnessed him "lean over as if into the passenger seat." Such movement, regardless of whether it was "furtive" or not, is sufficient to invoke *Long* and its progeny with regard to concerns for the officer's safety. *See, e.g.*, *United States v. Graham*, 483 F.3d 431, 433 (6th Cir. 2007) (upholding search of vehicle as valid under *Long* where officer "saw the Defendant dip his shoulder, as if he were putting something under the seat"); *United States v. Wynn*, 148 F. App'x 471, 473 (6th Cir. 2005) (upholding *Long* search of vehicle where officer "noticed a man sitting behind the wheel lean over in the vehicle for a few seconds").

-7-

Finally, defendant objects that the search was not justified to preserve evidence. This argument is without merit. Again, given that the radio dispatch referenced that defendant was armed with a handgun, once a patdown of the defendant failed to elicit such handgun, a search of the vehicle was necessary in order to protect the officer's safety and preserve any evidence related to the domestic assault.

In sum, it is clear that the search was legal under the Fourth Amendment. The court finds that although the defendant was not placed under custodial arrest until after the search, the search was nevertheless valid under *Terry*, *Long*, and their progeny as a protective search for weapons. Even supposing that defendant was arrested prior to the search, there was probable cause to arrest him, and the search incident thereto was valid.

**IV.**

For the foregoing reasons, defendant's Motion to Suppress Evidence [Doc. 11] is **DENIED**.

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge